# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MICHAEL B. EBLEN,**

    Plaintiff,

v.

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY**,

    Defendant.

_____

Civ. No. 6:16-cv-01678-JR

**FINDINGS &
RECOMMENDATION**

RUSSO, Magistrate Judge:

Plaintiff Michal B. Eblen seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability insurance benefits pursuant to Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 18, 2012. Tr. 20. Plaintiff alleged disability beginning September 9, 2012. Id. His applications were denied initially and upon review. Id. Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held October 2, 2014. Id. On January 16, 2015, the ALJ issued a decision finding plaintiff not disabled. Tr. 36. The Appeals Council

denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

Id. at 724-25; see also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Bustamante, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. Id. at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 9, 2012. Tr. 19. The ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with stenosis and right L-5 radiculopathy status post two L-5 surgeries, and obesity. Tr. 21. The ALJ determined that plaintiff's severe impairments did not meet or equal a listed impairment. Tr. 25.

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work with the following restrictions: he is able to lift/carry twenty pounds occasionally and ten pounds frequently; he is able to stand and/or walk for three hours total in an eight-hour workday; he is able to sit for six or more hours in an eight-hour workday; he can never climb ladders, ropes, or scaffolds; he must avoid exposure to hazards such as unprotected heights and large moving equipment; he must avoid exposure to high noise environments; and he can occasionally climb ramps and stairs, crouch, crawl, stoop, and kneel. Tr. 26.

The ALJ found that plaintiff was able to perform his past relevant work in data entry investigation, supervisor construction department, and supervisor manager. Tr. 34. Accordingly, the ALJ determined that plaintiff was not disabled. Tr. 36.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal

quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. Batson, 359 F.3d at 1198 (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision if an error is harmless. Id. at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting plaintiff's subjective symptom testimony; and (2) improperly assessed the medical opinions of Dr. Maness, plaintiff's treating physician, and Dr. Finch, plaintiff's treating neurologist.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting plaintiff's subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir.

2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). A claimant's daily activities may undermine her allegations if the claimant spends a substantial part of her day engaged in activities that are transferrable to a work setting or if the activities contradict her testimony. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

In this case, plaintiff rated his average daily level of pain at a six out of ten, but added that he gets some relief if he takes ibuprofen. Tr. 60. He has trouble rising from a sitting position due to stiffness in his back and the effort causes him to experience shooting pain in his right leg. Tr. 61. Plaintiff testified that he can comfortably lift ten pounds, but that if he tries to lift more than that, "it's a problem." Tr. 57. He testified that he can sit for half an hour before he needs to get up and that he cannot stand for more than twenty minutes. Id. Plaintiff testified that he can walk for half an hour at a time and that he spends eight hours per day in a recliner because of his back pain. Id.; Tr. 61. Plaintiff testified that he walks "a few blocks" once a week and works out with stretch bands twice a week for exercise. Tr. 58. Plaintiff acknowledged that his physicians had advised him of the importance of regular exercise to help his back pain, but that he found "it really did not" help. Id. Plaintiff testified that he sleeps between ten and eleven

hours per day and spends most of the rest of the time watching television from his recliner. Tr. 59. He will occasionally go outside for fresh air. Id.

   A. Inconsistent Statements

Inconsistent statements are a valid basis for finding a claimant not credible. Ghanim, 763 F.3d at 1163. In this case, plaintiff provided inconsistent statements on several relevant issues.

With regard to the side effects of his medication, plaintiff testified that he takes gabapentin three times a day for nerve and back pain and that it is effective, but that it makes him tired all the time. Tr. 55-56. Plaintiff told Dr. Maness that gabapentin caused "some looniness and fatigue" and "some" sleepiness. Tr. 326. When meeting with Dr. Finch, however, plaintiff denied any side effects from gabapentin. Tr. 337. On another occasion, plaintiff reported only "slight" sedation from gabapentin. Tr. 340. Plaintiff also testified his neurologist told him that "surgery was not an option," tr. 62, however, Dr. Finch reported plaintiff "opted to not have surgical treatment." Tr. 347.

In February 2014, plaintiff reported to Dr. Maness that he had engaged in physical therapy, but that the "exercises made his pain worse." Tr. 487. From the record, it appears that plaintiff only attended a single session of physical therapy consultation on February 4, 2014. Tr. 369. It does not appear from the record that any physical therapy treatment actually occurred. Tr. 370. Plaintiff reported that his pain was the same before and after treatment. Tr. 369.

The ALJ reasonably concluded these inconsistent statements undermined plaintiff's credibility and supported discounting plaintiff's subjective symptom testimony.

   B. Conservative Treatment

The ALJ found plaintiff had engaged in only conservative treatment. An ALJ may consider whether a claimant's level or frequency of treatment is inconsistent with the level of

complaints in making a credibility finding. Molina, 674 F.3d at 1114. "[U]nexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding, . . . but disability benefits may not be denied because of a claimant's failure to obtain treatment [due to] lack of funds." Orn, 495 F.3d at 638 (internal quotation marks and citation omitted).

In this case, plaintiff was advised by his physicians to pursue physical therapy. Tr. 269, 341, 397. Insurance issues may have initially prevented plaintiff from pursuing this course of treatment. Tr. 342. As discussed above, however, plaintiff was ultimately able to see a physical therapist through the Veterans Administration ("VA"). Tr. 369. From the record, it appears that plaintiff attended only the initial consultation and no actual treatment ever occurred. Tr. 370. Plaintiff then reported to Dr. Maness that he tried physical therapy and found the exercises made his condition worse. Tr. 491. The record supports the ALJ's conclusion that plaintiff engaged in conservative treatment by failing to follow through with the recommended physical therapy.

### C. Activities of Daily Living

Finally, the ALJ found that plaintiff's reported daily activities were inconsistent with his claimed level of impairment. Daily activities can support discounting claimant's alleged limitations when the claimant's activities either contradict other testimony or meet the threshold for transferable work skills. Molina, 674 F.3d at 1112-13. In evaluating a claimant's purported limitations, the ALJ need not consider whether the claimant's activities are equivalent to full-time work; it is sufficient that the claimant's activities "contradict claims of a totally debilitating impairment." Id. at 1113.

Plaintiff testified here that he lives alone and is able to independently bathe, dress, cook, do laundry, and shop. Tr. 58-59, 62. He does not require assistance to unload groceries from the

car. Tr. 62. He has a driver's license and drives two or three times per week to shop or visit his children and grandchildren. Tr. 58. He also cares for a pet cat and attends high school sporting events. Tr. 59.

Although these activities of daily living are not the equivalent of full time work, the ALJ reasonably concluded that they were not consistent with the level of impairment claimed by plaintiff. Although plaintiff urges a more favorable reading of the record, the ALJ's interpretation is reasonable.

The Court concludes the ALJ gave clear and convincing reasons supported by substantial evidence in the record for discounting plaintiff's subjective symptom testimony. The ALJ's conclusion should be affirmed on this issue.

## II. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by rejecting the medical opinion of Steven Maness, M.D., plaintiff's treating physician, and C. Mitchell Finch, M.D., plaintiff's treating neurologist.

The ALJ is responsible for resolving conflicts in the medical record. Carmickle, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Turner v. Comm'r, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." Id. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. Tommasetti, 533 F.3d at 1041; Andrews, 53 F.3d at 1042-43; Morgan v. Comm'r, 169 F.3d 595, 601-03 (9th Cir. 1999).

When a non-examining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the non-examining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. See, e.g., Nguyen v. Colvin, 95 F. Supp.3d 1286, 1293 (D. Or. 2015) (citing Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008)).

The opinions of both Dr. Maness and Dr. Finch were contradicted by the opinion of a non-examining physician, Martin Kehrli, M.D.[1] Tr. 32, 99-102. Accordingly, the ALJ need only provide specific and legitimate reasons for discounting the opinions of Dr. Maness and Dr. Finch.

**A. Dr. Maness**

Dr. Maness was plaintiff's treating physician from January 7, 2011, through February 21, 2014, when he switched to VA care. Tr. 277, 349. On February 21, 2014, Dr. Maness completed a disability questionnaire for plaintiff. Tr. 349-53. Dr. Maness diagnosed severe degenerative disc disease based on plaintiff's MRI, with back pain, right L5 radiculopathy, and spinal stenosis. Tr. 349.

In terms of functional limitations, Dr. Maness opined that plaintiff could remain seated for three hours in an eight hour work day and could stand or walk for four hours in the same period. Tr. 351. Dr. Maness believed that plaintiff could not sit for eight continuous hours, but

---

[1] The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence to justify the rejection of the opinion of an examining or treating physician. Morgan v. Comm'r, 169 F.3d 595, 602 (9th Cir. 1999). The Ninth Circuit has, however "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." Id. (emphasis in original).

would need to stand up for fifteen minutes every hour. Id. He believed plaintiff could lift or carry up to ten pounds occasionally. Id. Dr. Maness believed that plaintiff would require a fifteen minute break every hour. Tr. 352. Dr. Maness opined that plaintiff's back pain and stiffness would be exacerbated by a competitive work environment and that those symptoms would frequently be severe enough to interfere with plaintiff's attention and concentration. Id. Dr. Maness believed that plaintiff would likely be absent from work three or more times per month and that the condition had persisted since September 12, 2012. Tr. 353.

The ALJ gave little weight to Dr. Maness's opinion. Tr. 34. The ALJ found the limitations assessed by Dr. Maness were not consistent with the medical evidence, or with Dr. Maness's own treatment notes. Id.

Dr. Maness's examination of plaintiff showed relatively normal examination findings and conservative treatment. On September 13, 2012, four days after the alleged onset date, Dr. Maness found normal strength and a negative straight leg raise test and no point spinal tenderness, but diagnosed back pain due to spinal stenosis and prescribed back exercises. Tr. 269. On September 17, 2012, Dr. Maness saw plaintiff for a follow up appointment, where he found no point spinal tenderness and negative straight leg raise tests, bilaterally. Tr. 268. Dr. Maness then examined plaintiff on February 13, 2013, and completed plaintiff's Metlife disability claim form. Tr. 326. Plaintiff's hamstrings showed 4/5 strength in the lower left leg and 5/5 in all other leg muscles. Id. Dr. Maness found positive straight leg raises at 45 degrees in both legs, with pain in the lower back. Id. Based on the MRI results, Dr. Maness diagnosed severe degenerative disc disease and advised continuing plaintiff's current therapy. Id. Dr. Maness saw plaintiff for what appears to have been the final time on February 21, 2014. Tr. 487. Plaintiff reported that he "sometimes has to use a walker," but Dr. Maness observed non-antalgic

gait, no deformity, and a normal range of motion of all joints. Tr. 489. Although Dr. Maness did find a single positive straight leg raise test, the ALJ reasonably concluded that Dr. Maness's treatment notes generally reveal benign examination findings, which contradict the severe limitations assessed by Dr. Maness.

In light of Dr. Maness's relatively benign examination findings, the ALJ reasonably inferred that Dr. Maness relied heavily on plaintiff's subjective complaints. Tr. 34. The ALJ may properly reject an opinion if it is premised on the claimant's subjective complaints and the ALJ has already validly discounted the claimant's testimony. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). In this case, as discussed in the previous section, the ALJ properly rejected plaintiff's subjective symptom testimony. The ALJ did not, therefore, err in discounting Dr. Maness's opinion.

Additionally, on February 21, 2014, Dr. Maness reported that he saw plaintiff approximately twice a year. Tr. 349. As the ALJ noted, this contention was not supported by the medical record. In fact, at the time of Dr. Maness's final examination of plaintiff and submission of the disability questionnaire, Dr. Maness had not seen plaintiff since completing the Metlife disability form more than one year earlier. Tr. 34, 326. This internal inconsistency similarly supports the ALJ's decision to assign reduced weight to Dr. Maness's the opinion.

The Court concludes that the ALJ gave specific, legitimate reasons for discounting the opinion of Dr. Maness and therefore, the ALJ's opinion should be affirmed on this issue.

**B. Dr. Finch**

Beginning October 12, 2012, Dr. Finch was plaintiff's treating neurologist. Tr. 478. Dr. Finch submitted two identical letter opinions on April 24, 2013, and March 2, 2014. Tr. 347, 478. In those letters, Dr. Finch reported that plaintiff's pain was minimal at rest, but becomes

severe when bending, lifting, or stooping; and that, in his opinion, plaintiff was unable to do full-time competitive work. Id. On June 26, 2014, Dr. Finch submitted a disability questionnaire. Tr. 482-86. In the questionnaire, Dr. Finch opined that plaintiff would be able to sit or stand for less than one hour in an eight hour day and would require frequent breaks. Tr. 484. Dr. Finch believed that plaintiff could lift up to five pounds occasionally, but could not carry any weight. Id. Dr. Finch stated that plaintiff would require ten minute breaks "more frequently than every 30 minutes." Tr. 485. Dr. Finch opined that plaintiff would be absent three or more times a month. Tr. 486.

The ALJ gave little weight to Dr. Finch's opinion. Tr. 33. The ALJ found that Dr. Finch's opinion was not consistent with the medical evidence, or his own treatment notes. Id. Dr. Finch reported in the questionnaire that he had last examined plaintiff on June 3, 2014. Tr. 482. Although plaintiff did make an office visit on that date, Dr. Finch's treatment notes do not suggest that any examination occurred. Tr. 479-80.

Nor do Dr. Finch's treatment notes support the extreme limitations assessed in the disability questionnaire. On January 4, 2013, Dr. Finch found plaintiff's strength at 5/5 in his extremities, with negative straight leg raise tests bilaterally and normal coordination and gait. Tr. 336. On February 8, 2013, Dr. Finch saw plaintiff again. Tr. 337-38. Although Dr. Finch observed antalgic gait and the use of a walker, he found 5/5 strength and intact sensation in plaintiff's legs. Tr. 338. On March 8, 2013, Dr. Finch examined plaintiff again and found normal coordination and gait, 5/5 strength, normal reflexes and sensation, and negative straight leg raise tests bilaterally. Tr. 340. On April 5, 2013, Dr. Finch once again found normal gait and coordination, 5/5 strength, intact reflexes and sensation, and negative straight leg raise tests

bilaterally. Tr. 343. The ALJ reasonably concluded that these relatively benign examination findings conflicted with the extreme limitations assessed by Dr. Finch.

The ALJ also found Dr. Finch "relied heavily on the claimant's subjective complaints in lieu of objective exam findings." Tr. 33. As previously noted, the ALJ may properly reject an opinion if it is premised on the claimant's subjective complaints and the ALJ has already validly discounted the claimant's testimony. Fair, 885 F.2d at 605. Here, the ALJ properly discounted plaintiff's subjective symptom testimony and was therefore permitted to discount Dr. Finch's opinion to the extent it was based on plaintiff's subjective complaints.

The Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Finch's opinion.

## RECOMMENDATION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner should be AFFIRMED and this case should be DISMISSED.

//
//
//
//
//
//
//
//
//
//
//

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 31st day of October, 2017.

s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge